IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

WINCOPIA FARMS, LP                        *

    Plaintiff,                            *

       v.                               *      CIVIL NO.: WDQ-11-1159

G&G, LLC, *et al.*,                       *

    Defendants.                           *

*     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM OPINION

Wincopia Farms, LP ("Wincopia Farms") sued G&G, LLC ("G&G") and 10010 Gorman Road, LLC (collectively, "defendants"), in the United States Bankruptcy Court for the District of Maryland for fraudulent inducement to enter into a contract to guarantee a loan to Wincopia Farms, Inc. ("Wincopia, Inc."). For the following reasons, the Bankruptcy Court's report and recommendations will be adopted as to all conclusions of fact and law except footnote 8 and conclusions of law 13, 16, and 17. The second amended complaint will be dismissed with prejudice.

I.  Background[1]

Wincopia Farms is a single-asset real estate[2] limited partnership in Howard County, Maryland. ECF No. 2 at 4. It

--------

[1] The facts are not disputed. For the motion to dismiss, the well-pled allegations in Wincopia Farms's complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993).

owned 124 acres of land in Howard County ("the farm"), and valued the property at about $30 million. *Id.* Wincopia, Inc. leased the property and operated a nursery there. *Id.* at 4-5. The Hearn family owns and operates Wincopia Farms and Wincopia, Inc. *Id.* at 5.

In 2002, Wincopia, Inc. owed $2.9 million to United Bank, under a loan secured by the farm. ECF No. 8 Attach. 31 ¶8 (second amended complaint). It was unable to repay the loan and United Bank was unwilling to extend it; to avoid foreclosure, Wincopia, Inc. sought to refinance the loan. *Id.* From 2002 through 2006, G&G lent money to Wincopia, Inc to refinance the earlier loan and provide operating funds each year.[3] ECF No. 2

---

[2] Single asset real estate is a single piece of real property (other than residential real property with fewer than four residential units) which generates "substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto." 11 U.S.C. § 101(51B).

[3] According to Wincopia Farms's second amended complaint, on July 18, 2002, "G&G purportedly loaned [Wincopia, Inc.] $4.5 million for 12 months at an interest rate of 12% on take-it-or-leave-it terms . . . . Of the loan amount, only $3,647,816 was paid to, or on behalf of, [Wincopia, Inc.]. The balance of the loan was used to fund the payment of closing costs, loan fees and the prepayment of interest in the form of the mandatory purchase of a membership interest in G&G." ECF No. 8 Attach. 31 ¶10. In return, Wincopia Farms was required to guarantee the loan by conveying the farm to G&G in trust. Wincopia, Inc. was unable to repay the 2002 and subsequent loans; each year G&G renewed and increased the loan "on take-it-or-leave-it terms" without giving more money to Wincopia, Inc. For each renewal, Wincopia Farms executed a new guaranty of payment and deed of trust in

2

at 4.  In exchange, it held an indemnity deed of trust ("IDOT")
on the farm as a guaranty; Wincopia Farms is the guarantor of
the loans.  *Id.*

On June 28, 2007, Wincopia Farms filed for bankruptcy
protection with the United States Bankruptcy Court for the
District of Maryland.[4]  ECF No. 2 at 4.  It is a debtor-in-
possession in the bankruptcy proceeding.  *Id.*

On August 1, 2007, G&G sued Wincopia, Inc. and members of
the Hearn family and its trust after Wincopia, Inc. defaulted on
the loan.  ECF No. 2 at 5.  In November and December, 2007, the
Circuit Court for Arlington County, Virginia entered judgments
against the defendants.  *Id.*

On October 2, 2007, G&G moved for relief from the automatic
stay in Wincopia Farms's bankruptcy proceeding.  *Id.*  On
December 13, 2007, the Bankruptcy Court modified the automatic
stay, keeping it in effect but requiring Wincopia Farms to make
payments to G&G.  *Id.*  Wincopia Farms failed to make those
payments, and on December 31, 2007 the stay was lifted.  *Id.*  A
foreclosure sale of the farm was scheduled for February 14,
2008.  *Id.*

---

the farm.  *Id.* ¶¶10-22.  By 2006, the loan totaled $9.8 million.
ECF No. 8 Attach. 31 ¶21.

[4] Wincopia, Inc. has not filed a bankruptcy petition.  ECF No. 2
at 5.  Wincopia Farms disputed G&G's lien on the farm in its
bankruptcy petition.  *Id.* at 4 n.4.

On November 9, 2007, Wincopia Farms filed an adversary proceeding in the Bankruptcy Court, alleging that G&G had committed fraud against Wincopia, Inc. and Wincopia Farms.   ECF No. 6 Attach. 1.

On February 13, 2008, in the Circuit Court for Howard County, Wincopia Farms moved to stay the foreclosure sale, alleging that the lien was invalid because of G&G's fraud.   ECF No. 2 at 6.   The court denied the motion, and G&G purchased the property at auction the next day for $12.5 million.[5]   On July 17, 2009, after overruling Wincopia Farms's objections to ratifi-cation, the circuit court ratified the sale.   *Id.*

On April 9, 2008, Wincopia Farms amended its complaint in the adversary proceeding, to allege breach of contract, inten-tional misrepresentation and fraud, negligent misrepresentation, breach of fiduciary duty, tortious interference, and Maryland Securities Act violations.   ECF No. 2 at 7.   On March 25, 2009, the Bankruptcy Court granted G&G's motion to dismiss the complaint, because the complaint alleged claims against G&G as a lender to Wincopia, Inc., the borrower, and under the applicable Virginia law the guarantor, Wincopia Farms, lacked standing to

---

[5] The Court of Special Appeals affirmed the denial of the stay of sale, without addressing the merits of Wincopia Farms's fraud allegations, beyond stating that "any alleged misconduct on [G&G's] part was totally unrelated to [Wincopia Inc.'s] default."   *Wincopia Farm, LP v. Goozman*, 982 A.2d 868, 875 (Md. App. 2009) (internal quotation marks omitted).

pursue the claims.  *Id*.  On May 21, 2009, Wincopia Farms moved

to file a second amended complaint.[6]  *Id*. at 8.  On May 29, 2009,

---

[6] The Second Amended complaint alleged that G&G had committed
fraud against and made intentional misrepresentations to
Wincopia, Inc. and Wincopia Farms that induced Wincopia Farms to
agree to guarantee the loan and mortgage the farm.  It alleged
that G&G had:

> a) suggested it had "approved" Wincopia, Inc. for the loan,
> implying that it believed Wincopia, Inc. would be able to
> repay the loan, when in fact G&G had not investigated
> Wincopia, Inc.'s ability to repay the loans;
>
> b) suggested it would change the terms of the loan for
> Wincopia, Inc.'s "good behavior" by converting the one-year
> loan into a more favorable longer-term loan, when Wincopia,
> Inc. could not repay the loans on the one-year schedule,
> and would never be able to demonstrate its good behavior;
>
> c) stated it had no extra funds to lend Wincopia, Inc.,
> when Wincopia Farms requested increased money Wincopia,
> Inc. "desperately needed . . . to make a loan default less
> likely," when it had $9.1 million available in late 2002;
>
> d) stated that Wincopia Farms could be represented by an
> attorney in the loan transaction, when under G&G's system,
> meaningful representation was not possible;
>
> e) stated to Wincopia Farms that Wincopia, Inc. would
> receive the face value of the loans, when in fact it
> received less money, and paid higher interest rates than
> authorized by the loan documents;
>
> f) stated that Wincopia, Inc. would have membership rights
> in G&G, when G&G planned to--and did--unilaterally
> eliminate those rights; and
>
> g) intentionally concealed these material facts:
>
>> 1) by Fall 2001, G&G had a policy to obtain borrowers'
>> collateral by lending to desperate borrowers on take-it-
>> or-leave-it terms and "grossly over-collateraliz[ing]"
>> them;

5

the Bankruptcy Court granted Wincopia Farms's motion to
reconsider the fraud count because Maryland law applied to that
claim. *Id.* at 7.

On June 15, 2009, the defendants objected to Wincopia
Farms's motion to file the second amended complaint and moved to
dismiss it. ECF No. 2 at 17. The Bankruptcy Court determined
that the adversary proceeding was not a "core proceeding" under
28 U.S.C. 157(c) and prepared a report and recommendation for
this Court. *Id.* at 2. The report granted Wincopia Farms's
motion to file a second amended complaint, and recommended
granting G&G's motion to dismiss because Wincopia Farms had
alleged fraud against Wincopia, Inc., and lacked standing to
bring Wincopia, Inc.'s claim. *Id.* at 23-24. Wincopia Farms
objected to various proposed findings of fact and conclusions of
law. ECF No. 4.

---

2) G&G had a "scheme and plan to purposefully structure
the Loans so that default on the loan was a virtual
certainty" by lending less money than Wincopia, Inc.
needed to generate funds to repay the loan, and falsely
promising that G&G would extend the loan for as long as
Wincopia, Inc. needed to repay it; and

3) G&G had "pre-engineered [Wincopia, Inc.'s] default"
at the end of each one-year term, eventually making re-
financing impossible.

ECF No. 8 Attach. 31 ¶¶28, 29, 31, 32.

II.  Analysis

A.  Standard of Review

Under 28 U.S.C. § 157(c)(1), this Court reviews "*de novo*
those matters to which any party has timely and specifically
objected." Wincopia Farms has objected to the Bankruptcy
Court's proposed dismissal of the second amended complaint for
failure to state a claim. ECF No. 4 at 5. The review of the
Bankruptcy Court's recommendation in this adversary proceeding
is under Fed. R. Civ. P. 12(b)(6) and 8(a)(2).

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed
for failure to state a claim upon which relief can be granted.
Rule 12(b)(6) tests the legal sufficiency of a complaint, but
does not "resolve contests surrounding the facts, the merits of
a claim, or the applicability of defenses." *Presley v. City of
Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a
"short and plain statement of the claim showing that the pleader
is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l
Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's
notice-pleading requirements are "not onerous," the plaintiff
must allege facts that support each element of the claim
advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761,
764-65 (4th Cir. 2003). These facts must be sufficient to

"state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)(*quoting Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

B.   Objection to Footnote 8 (Proposed Finding of Fact 15)

Wincopia Farms objects to the Bankruptcy Court's finding that it had "filed a similar complaint against [G&G and 10010 Gorman Road] in the U.S. District Court for the District of Maryland" which was dismissed for lack of subject matter jurisdiction.[7]  ECF No. 4 at 1 (*quoting* ECF No. 2 at 18 n.8). Wincopia Farms contends that Wincopia, Inc. filed that suit in which Wincopia Farms was not a party.  *Id.* at 2.

---

[7] *Wincopia Farms, Inc. v. G&G, LLC*, No. WDQ-09-2023 (D. Md. Mar. 22, 2010).

The defendants agree that Wincopia Farms was not a party to the suit mentioned in footnote 8, but contend that the finding is irrelevant to the Bankruptcy Court's other findings of fact and conclusions of law.  ECF No. 5 at 2.  The Bankruptcy Court did not rely on the challenged fact in any other part of its report and recommendation.  *See* ECF No. 2.

Accordingly, the Court will sustain the objection to footnote 8.

C.   Objections to Proposed Conclusions of Law

1.   Independent Harm Requirement

Wincopia Farms objects to the Bankruptcy Court's conclusion that under Maryland law, the guarantor of a loan lacks standing to sue the lender for fraud in inducing the borrower to take the loan, unless the guarantor can demonstrate its independent harm. ECF No. 4 at 2.

Wincopia contends that it *has* alleged independent harm, and adds that whether a guarantor must allege independent harm in Maryland is a novel question that should be certified to the Court of Appeals of Maryland.  *Id.*  The defendants agree that the question is novel in Maryland, but contend that certification is unnecessary because under *Erie Railroad v. Tompkins*, 304 U.S. 64, 80 (1939), a federal court sitting in diversity may predict how the state's highest court would rule on the issue.  ECF No. 5 at 3.

9

Under Maryland law, a guaranty is a contractual agreement, independent from the loan agreement. *Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985). Accordingly, the guarantor is not a party to the principal obligation. *Id.* at 260, 492 A.2d at 1309. A plaintiff must allege a wrong against *itself*, not against a third party, to establish standing. *Hand v. Mfrs. & Traders Trust Co.*, 405 Md. 375, 399, 952 A.2d 240, 254 (2008).[8]

Accordingly, the Maryland Court of Appeals would likely require independent harm and adopt the majority rule that a guarantor lacks standing to sue for injury to a borrower.[9] The Court will overrule Wincopia Farms's objection.

### 2.   Applicability of *Ellerin*

Wincopia Farms contends that a guarantor "has independent standing to bring a cause of action against the lender for

---

[8] *See also Griesi v. Atl. Gen. Hosp. Corp.*, 360 Md. 1, 12-13, 756 A.2d 548, 554 (2000) (Plaintiff alleging fraud by negligent misrepresentation must prove defendant breached a duty owed to it, "demonstrated by showing contractual privity or its equivalent."); *Norman v. Borison*, 994 A.2d 1019, 1027 (Md. Ct. Spec. App. 2010) (Plaintiff lacked standing to sue for defamation based on allegedly defamatory remarks about plaintiff's business partners and limited liability company but not against plaintiff personally, although the statements may have harmed his reputation.), *aff'd*, 418 Md. 630, 17 A.3d 697 (2011).

[9] *See, e.g.*, *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F. Supp. 2d 694, 701 (E.D. La. 1999) (applying Louisiana law); *Taggart & Taggart Seed, Inc. v. First Tenn. Bank Nat'l Ass'n*, 684 F. Supp. 230, 235 (E.D. Ark. 1988) (applying Arkansas law).

fraudulently inducing the guarantor's execution of the guaranty." ECF No. 4 at 4. Wincopia Farms objects to the Bankruptcy Court's proposed conclusion of law 13, in which the Bankruptcy Court concluded that *Ellerin v. Fairfax Sav. Ass'n, F.S.B.*, 337 Md. 216, 652 A.2d 1117 (1995) does not establish that a guarantor has standing to bring such a suit. ECF No. 2 at 26; ECF No. 4 at 3-4, 13-14.

The Bankruptcy Court concluded that, because the guarantors in *Ellerin* filed related counterclaims after the lender sued the borrower and the guarantors, they did not need to prove standing to bring their counterclaim. ECF No. 2 at 26-27. A plaintiff's claim does not enable the defendant to bring a counterclaim premised on all its grievances against the plaintiff. *Roper v. Camuso*, 376 Md. 240, 273, 829 A.2d 589, 609 (2003).[10]

In proposed conclusion 15, the Bankruptcy Court further distinguished Wincopia Farms's complaint from the counterclaim in *Ellerin* because Wincopia Farms's suit alleges fraud against the borrower, not against itself. ECF No. 2 at 29. Wincopia Farms objects to that conclusion on the grounds it objected to conclusion 13. ECF No. 4 at 14. *Ellerin* does not give a guarantor standing to sue a lender for fraud in the loan

---

[10] "As a threshold inquiry in *any litigation*, a *party* must be able to demonstrate [standing and justiciability]." *Maddox v. Cohn*, 20 A.3d 153, 157 (Md. Ct. Spec. App. 2011)(emphasis added).

agreement: the guarantors in *Ellerin* alleged fraud in the *guaranty* agreement. *See Ellerin*, 337 Md. at 223, 652 A.2d at 1120.[11] The Court will overrule Wincopia Farms's objection to proposed conclusion 15 because, as discussed below, Wincopia Farms's complaint does not allege fraud in the inducement of the guaranty agreement.

*Ellerin* demonstrates that Maryland recognizes a claim for fraud in inducing a guarantor to enter the guaranty agreement, and a guarantor has standing to bring that claim. The Court will sustain the objection to conclusion 13.

### 3. The Complaint does not Allege an Independent Claim

The Bankruptcy Court concluded that the allegations in the second amended complaint "allege fraud in the making of the loans," not in inducing the guaranty. ECF No. 2 at 27-29. The Bankruptcy Court considered the seven new allegations in the second amended complaint, and concluded that each alleged a cause of action by Wincopia, Inc., or was insufficient as a

---

[11] The Maryland Court of Special Appeals has held that "a guarantor possesses all the *defenses* available to the principal debtor." *Bessette v. Weitz*, 811 A.2d 812, 825 (Md. Ct. Spec. App. 2002) (internal quotation marks omitted) (*citing Provident Bank of Md. v. Travelers Prop. Cas. Corp.*, 236 F.3d 138, 147 (4th Cir. 2000)). Those defenses are asserted to *prevent* collection of the debt, not in an affirmative fraud suit against the lender. *See* Restatement (3d) Security & Suretyship And Guaranty. Accordingly, that holding does not affect Wincopia Farms's claims.

matter of law to allege fraud in the inducement of the guaranty. *Id.*

Wincopia Farms objects to the Bankruptcy Court's findings for five of the allegations and contends that if the allegations are not individually sufficient, together they reveal a scheme to fraudulently induce Wincopia Farms to guarantee the loan. ECF No. 4 at 5-13.

### i.   Fraud

Wincopia Farms's objections to conclusion 14 concern whether it has stated a claim for fraud in the inducement of the guaranty.  ECF No. 4 at 5-14.  In Maryland, to assert a claim for fraud, the plaintiff must allege that: the defendant (1) made a false representation of a material fact[12] to the plaintiff;[13] (2) knew that the representation was false, or made it with reckless indifference as to its truth; (3) made the misrepresentation for the purpose of defrauding the plaintiff; and that the plaintiff (4) rightfully relied on the misrepresentation; and (5) was injured by its reliance.  *Gourdine v. Crews*,

---

[12] A material fact "is one on which a reasonable person would rely in making a decision."  *Sass v. Andrew*, 832 A.2d 247, 260 (Md. Ct. Spec. App. 2003).

[13] In Maryland, a party to a transaction has no duty to disclose facts unless the concealed information "materially qualif[ies] representations made" to the other party.  *Sass*, 832 A.2d at 260; *see also Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.*, 283 Md. 296, 323, 389 A.2d 887, 903 (1978).

405 Md. 722, 758, 955 A.2d 769, 791 (2008).  Maryland recognizes the tort of fraudulent inducement.  *Appel v. Hupfield*, 198 Md. 374, 378-79, 84 A.2d 94, 96 (1951).

The complaint must identify "the facts constituting a fraud . . . with certainty and particularity."  *Sims v. Ryland Grp., Inc.*, 378 A.2d 1, 3 (Md. Ct. Spec. App. 1977)[14] (*quoting Edison Ralty Co. v. Bauernschub*, 191 Md. 451, 460-61, 62 A.2d 354, 358 (1948)).  The plaintiff must identify a definite representation; "mere vague, general, or indefinite statements are insuffic-ient."  *Fowler v. Benton*, 229 Md. 571, 579, 185 A.2d 344, 349 (1962).  A vague or general statement "should . . . put the hearer upon inquiry, and there is no right to rely on such statements."  *Id.*  Further, a party cannot allege reasonable reliance on a misrepresentation if it "knew the facts as they actually existed," *Carozza v. Peacock Land Corp.*, 231 Md. 112, 121, 188 A.2d 917, 921 (1963), or should have known the true facts, *Sass v. Andrew*, 832 A.2d 247, 266 (Md. Ct. Spec. App. 2003).

---

[14] In *Sims*, the plaintiffs alleged that the defendants "falsely, wrongfully, and fraudulently represented to them that [a planned house] would conform to the model home which they had been shown."  378 A.2d at 2.  The court dismissed the action for failure to state a claim because the assertion that the house would conform to the model home was too general to support a fraud claim.  *Id.* at 3.

14

ii.   Conclusion 14(a)

The Bankruptcy Court concluded that "[w]hether G&G misrepresented that [Wincopia, Inc.] had been approved for the loans but had performed no due diligence is unavailing to [Wincopia Farms]" because, by guaranteeing the loan, Wincopia Farms promised that Wincopia, Inc. was able to repay the loan and that promise "was absolute and not dependent upon any finding by G&G that [Wincopia, Inc.] was creditworthy."  ECF No. 2 at 27.  Wincopia Farms objects that the Bankruptcy Court incorrectly relied on "the legal effect of executing a guaranty" rather than the inducement to execute it.  ECF No. 4 at 5.  It contends that "[t]here is no more material a representation that a lender can make to a guarantor, than a representation that the borrower is credit worthy."  *Id.* at 7.

Assuming G&G falsely suggested it had approved Wincopia, Inc. for the loans, and that such a suggestion was material, the complaint identifies "mere vague, general, [and] indefinite statements" relating to the alleged misrepresentation.  *See Fowler*, 229 Md. at 579, 185 A.2d at 349.  Wincopia Farms alleged that "[b]y its actions, documents and statements, G&G led Wincopia [Farms] to believe that [Wincopia, Inc.] had been 'approved' for the Loans."  ECF No. 8 Attach. 31 ¶28(a).  It added that G&G "issued a formal, written 'loan commitment' and extracted a 'loan commitment fee.'"  *Id.*

15

Wincopia Farms does not explain what a "loan commitment" is, beyond an agreement to make the loan to Wincopia, Inc. *See Id.* A guarantor cannot reasonably rely on a lender's general willingness to lend to show that the borrower is able to repay the loan. *Cf. Daniels*, 303 Md. at 260, 492 A.2d at 1309.[15]

Additionally, Wincopia Farms's other allegations show that it could not have reasonably relied on the misrepresentation. Wincopia Farms alleged that it "wanted G&G to loan [Wincopia, Inc.] . . . more" than it received "for money [Wincopia, Inc.] *desperately needed* . . . to greatly improve [Wincopia, Inc.'s] ability . . . to repay the 2002 Loan *and to make a default less likely*." ECF No. 8 Attach. 31 ¶28(c) (emphasis added). Thus, Wincopia Farms alleged that, at the time of the misrepresentation, it knew that Wincopia, Inc. would likely be unable to repay the loan. Accordingly, any reliance on G&G's implication that Wincopia, Inc. would be able to repay the loan was unreasonable. *See Carozza*, 231 Md. at 121, 188 A.2d at 921.

---

[15] A lender need not assure itself of the borrower's creditworthiness before extending a loan. *See Green v. Green*, 367 A.2d 102, 104 n.3 (Md. Ct. Spec. App. 1976) (lender may find, after making the loan, that borrower "has overextended himself"). In guaranteeing a loan, the *guarantor*, not the lender, "agrees that the [borrower] is able to and will perform" the underlying contract. *Daniels*, 303 Md. at 260, 492 A.2d at 1309. Wincopia Farms correctly notes that this agreement relates to the legal effect of the guaranty. ECF No. 2 at 5. Additionally, the guarantor's agreement demonstrates that offering to lend is not an indication that the lender believes the borrower will be able to repay. *See Green*, 367 A.2d at 104 n.3; *Daniels*, 303 Md. at 260, 492 A.2d at 1309.

The Bankruptcy Court correctly concluded that Wincopia Farms failed to state a claim of fraud when it alleged that G&G falsely suggested it had approved Wincopia, Inc. for the loan. The objection will be overruled.

iii. Conclusion 14(b)

The Bankruptcy Court concluded that Wincopia Farms failed to state a claim by alleging that G&G falsely stated that Wincopia, Inc., would receive a repayment extension for good behavior each year. ECF No. 2 at 27. Wincopia Farms relies on the reasoning for its objection to conclusion 14(a). ECF No. 4 at 8-9.

Wincopia Farms knew that loans would be due after one year, and Wincopia, Inc. would probably be unable to repay any portion of the loan.[16] ECF No. 8 Attach. 31 ¶28(b)-(c). Accordingly, Wincopia Farms should have known that Wincopia Inc. would never have the opportunity to satisfy a "good behavior" extension. The objection will be overruled.

iv. Conclusion 14(e)

Wincopia Farms alleges that G&G "intentionally concealed" that it schemed to, and repeatedly did, "set[] its borrowers up to fail" so it could take their collateral. ECF No. 8 Attach.

---

[16] Wincopia Farms alleges that because "the loans had prepaid interest and fees with a balloon payment of the entire amount of the loan due annually, there was no 'good behavior' by which to judge the merits of an extension." ECF No. 8 Attach. 31 ¶28(b).

31 at 8.  The Bankruptcy Court concluded that such a policy did
not give Wincopia Farms a claim because Wincopia Farms
understood and accepted the nature and terms of the loan when it
agreed to guarantee it.  ECF No. 2 at 28.

Wincopia Farms objects, noting that the Court must accept
as true all allegations in the complaint, and it alleged that it
was *not* aware of any scheme when it entered the transaction and
G&G had a duty to disclose its lending policy.[17]  ECF No. 4 at 9.

The Court must accept well-pled allegations of fact as
true, but it need not give legal conclusions the same
presumption of validity.  *Papasan v. Allain*, 478 U.S. 265, 286
(1986).  Wincopia Farms's allegation that G&G had a duty to
disclose its scheme is a legal conclusion.  Though "legal
conclusions can provide the framework of a complaint, they must
be supported by factual allegations."  *Ashcroft v. Iqbal*, 129
S. Ct. 1937, 1950 (2009).  As there is generally no duty to
disclose information to the other party in a transaction, *see*
*Sass*, 832 A.2d at 260, Wincopia Farms must allege facts

---

[17] The second amended complaint alleges that Wincopia Farms *was*
aware of the terms of the loan and guaranty in its transaction.
ECF No. 8 Attach. 31 ¶¶10-11.  Accordingly, here it can claim
only that G&G fraudulently failed to disclose that it had used
similar terms in *other* loans, with the intent to obtain the
collateral rather than repayment of the loan.

supporting its claim that G&G had such a duty.[18]   It has not.
*See* ECF No. 8 Attach. 31.

Further, Wincopia Farms could not have reasonably relied on
the alleged omission.  Wincopia Farms contends that it would not
have guaranteed the loan had it known about G&G's past
practices, and accordingly it relied detrimentally on G&G's
failure to disclose that information.  ECF No. 8 Attach. 31 ¶36.
Accepting those allegations as true, that reliance was not
reasonable.

Wincopia Farms alleged that it knew the terms of the loan
rendered default likely, and guaranteed the agreement despite
that knowledge.  ECF No. 8 Attach. 31 ¶28(b),(c).  It knew that
Wincopia, Inc. would not receive enough money from the loan to
operate the farm in a way that would produce enough profits to
repay the loan.  *Id.* ¶28(c).  It knew that the one-year term
would be more difficult to repay than a multi-year term.  *Id.*
¶28(b).  It knew that Wincopia, Inc. was unable to pay other
loans at the time it approached G&G.[19]  *Id.* ¶8.  It knew the farm
was worth $30 million, more than six times the amount of the

---

[18] It is unclear what representations might be affected by G&G's
prior lending practices, as Wincopia Farms was aware of the
terms of the Wincopia loan and guaranty, and of the likelihood
that Wincopia, Inc. would default on the loan.  *See* ECF No. 8
Attach. 31 ¶¶10-11.

[19] Wincopia, Inc. sought the loan from G&G to pay off a loan
secured by the farm and *avoid* losing the farm.  ECF No. 8
Attach. 31 ¶8.

original loan ($4.5 million) and more than three times the final
loan amount ($9.8 million). ECF NO. 8 Attach. 31 ¶¶33, 21. It
knew that G&G was willing to lend Wincopia, Inc. $4.5 million
only if Wincopia Farms gave it a deed of trust to the farm worth
$30 million. *Id.* ¶¶10-11. Accordingly, based on its
allegations, Wincopia Farms should have known that the structure
of the loan would force a default. With that knowledge, it
cannot have reasonably relied on G&G's silence about past
practices to assume that G&G was not trying to force a default.
*Cf. Carozza*, 231 Md. at 121, 188 A.2d at 921 (reliance on
another party's misrepresentation is unreasonable when the
plaintiff knew the true state of affairs).

The Bankruptcy Court correctly concluded that Wincopia
Farms failed to state a claim for fraud based on failure to
disclose information; Wincopia Farms's objection will be
overruled.

v.   Conclusion 14(f)

The Bankruptcy Court concluded that the fact the
collateral--the farm--was worth more than the loan was not fraud
because the "disparity was disclosed fully" when Wincopia Farms
agreed to guarantee the loan. ECF No. 2 at 29. Wincopia Farms,
incorporating its objection to conclusion 14(e), concedes that
the over-collateralization of the loan, "standing alone" may not
establish fraud, but contends that the allegation supports its

20

claim that G&G engaged in a "larger scheme to defraud." ECF No. 4 at 13. As noted above, Wincopia Farms knew that the loan was over-collateralized when it agreed to the guaranty. ECF No. 8 Attach. 31 ¶¶10-11. The disparate values of the loan and collateral demonstrate the unreasonableness of reliance on a belief that G&G had no intention obtaining the farm upon Wincopia, Inc.'s default.

As the Court will overrule the objection to conclusion 14(e) because the alleged scheme fails to state a claim for fraud, conclusion 14(f) is correct and Wincopia Farms's objection to that conclusion will be overruled.

vi.  Conclusion 14(g)

Wincopia Farms alleged that G&G falsely stated that it was unable to lend more than it offered Wincopia, Inc. to force Wincopia, Inc. to default so that G&G could take the collateral. ECF No. 8 Attach. 31 ¶28(c). The Bankruptcy Court concluded that the allegation was "irrelevant because [G&G] was not obligated to advance additional monies under the terms of the loans." ECF No. 2 at 29. Wincopia Farms objects, arguing that the misrepresentation was part of G&G's fraudulent "scheme and plan to purposefully structure the loans . . . so that default . . . was a virtual certainty." ECF No. 4 at 13.

G&G's obligations under the terms of the loans are irrelevant to the claim of fraudulent *inducement* to guarantee

21

the loan, because that claim considers the lender's acts in convincing the guarantor to *make* the guaranties, not compliance with the terms of the loan or guaranty. *See Appel*, 198 Md. at 378-79, 84 A.2d at 96. For the reasons stated above, the alleged scheme does not state a claim for fraud.[20] The Court agrees with the conclusion in 14(g).

The objections to conclusion 14 will be overruled. The Second Amended Complaint fails to state a claim; it will be dismissed.

> 4. Conclusion 16: Res Judicata & Collateral Attack

The Bankruptcy Court concluded that a state court enforced the guaranty, and this Court cannot not challenge or "und[o]" that proceeding. ECF No. 2 at 29. The Bankruptcy Court refers to Wincopia Farms's motion, filed in Maryland's Circuit Court for Howard County, to stay the foreclosure sale. *Id.* at 6. Wincopia Farms contends that the Maryland courts did not consider the fraud claim, and accordingly the judgments have no effect on this proceeding. ECF No. 4 at 15-16.

---

[20] Additionally, Wincopia Farms alleges that it knew Wincopia, Inc. would likely default on the loan under the terms offered. ECF No. 8 Attach. 31 ¶28(c). Wincopia Farms does not allege that the guaranty agreement was unconscionable. *See* ECF No. 8 Attach. 31. It could not have been reasonable for Wincopia Farms to agree to guarantee the loan based on G&G's claim that it was lending as much money as it could, knowing that the terms rendered Wincopia, Inc. unlikely to repay it. *Cf. Carozza*, 231 Md. at 121, 188 A.2d at 921 (reliance on another party's misrepresentation is unreasonable when the plaintiff knew the true state of affairs).

Federal courts apply the law of the state in which a prior judgment was rendered to determine whether to give that judgment preclusive effect. *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000) (*citing* 28 U.S.C. § 1738). The Maryland Court of Special Appeals (and the Circuit Court for Howard County) rendered the prior judgments. *Wincopia Farm, LP v. Goozman*, 982 A.2d 868 (Md. Ct. Spec. App. 2009). Accordingly, Maryland law governs res judicata and collateral estoppel. *Genesys*, 204 F.3d at 127.

In Maryland, res judicata precludes relitigation of a claim when: (1) the claim in the present dispute is identical to that decided in the earlier dispute; (2) there was a final judgment on the merits in the earlier proceeding; and (3) the parties in this litigation are the same as or in privity with those in an earlier dispute. *Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 361 Md. 371, 392, 761 A.2d 899, 910 (2000).

Collateral estoppel bars relitigation of an issue when: (1) the issue in the present dispute is identical to that decided in an earlier dispute; (2) there was a final judgment on the merits in the earlier proceeding; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the earlier proceeding; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to be heard on the issue. *Id.*

23

Wincopia Farms contends that collateral estoppel and res judicata do not apply here because, although it asserted that the guaranty was invalid because of fraud, the state courts did not reach that argument.  ECF No. 4 at 15.  According to Wincopia Farms, failure to reach the fraud issue renders the issues in the proceedings distinct and precludes application of collateral estoppel or res judicata.  *Id.*  The defendants contend that Wincopia Farms did not raise an affirmative fraud claim in the Maryland courts, and accordingly is barred from raising it here.  ECF No. 5 at 13.  Wincopia Farms acknowledges that it did not seek "affirmative relief," i.e. a counterclaim for fraud, in the Maryland courts.  ECF No. 4 at 16.

A party is generally estopped from raising a claim in a subsequent proceeding that it could have raised as a counter-claim in an earlier proceeding if "successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action," including when the subsequent judgment would "depriv[e] the plaintiff in the first action of property rights vested in him under the first judgment." Restatement (2d) Judgments § 22(2)(b); *id.* cmt. f (*adopted by Rowland v. Harrison*, 320 Md. 223, 236, 577 A.2d 51, 57 (1990)).  However, in Maryland this is only the case when the movant in the earlier proceeding had the burden of proving the issue raised in the later proceeding.  *Fairfax Sav., F.S.B. v.*

*Kris Jen Ltd. P'ship*, 338 Md. 1, 31-32, 655 A.2d 1265, 1280 (1995).[21]

As G&G did not have to prove absence of fraud to succeed in the foreclosure action, Wincopia Farms is not precluded from litigating the fraud claim here. *See Kris Jen*, 338 Md. at 31, 655 A.2d at 1279. The objection to conclusion 16 will be sustained.

### 5. Bankruptcy Estate Property

The Bankruptcy Court concluded that when G&G bought the farm at the foreclosure sale, the farm left the bankruptcy estate, and the Bankruptcy Court lost jurisdiction over it. ECF No. 2 at 30. Wincopia Farms contends that, even if the farm is no longer estate property, the cause of action is, and the

---

[21] The Maryland Court of Appeals held in *Rowland v. Harrison*, 320 Md. 223, 577 A.2d 51 (1990), that a horse owner was not collaterally estopped from suing his veterinarian for malpractice when, in an earlier proceeding, the client was liable to the veterinarian for the reasonable value of services rendered under an implied contract, and the owner voluntarily dismissed a counterclaim for malpractice. Though judgment in favor of the owner would undermine the earlier award, the veterinarian did not need to prove lack of malpractice to succeed in her contract action, and that action could succeed without affecting the earlier holding. *Kris Jen*, 338 Md. at 31-32, 655 A.2d at 1280. Accordingly, the subsequent case would not nullify the earlier judgment. *Rowland*, 320 Md. at 236, 577 A.2d at 57. The Maryland Court of Appeals distinguished that case in *Kris Jen*, in which a mortgagor and guarantor alleged that there had been no foreclosure-triggering default before the mortgagee foreclosed. The court held that that claim was barred by the earlier foreclosure action between the parties because in the prior proceeding, the mortgagee had the burden of proving that the foreclosure-triggering event had occurred. *Id.*

Bankruptcy Court retains jurisdiction over the claim.   ECF No. 4 at 18.

The bankruptcy estate includes all property in which the debtor has a legal or equitable interest.   11 U.S.C. § 541(a)(1).  When a Bankruptcy Court lifts the automatic stay against enforcement of liens on property of the bankrupt estate to allow the lienholder "to proceed on its own against the property," the property leaves the estate, and the Bankruptcy Court loses jurisdiction over it.  *In re Incor, Inc.*, 113 B.R. 212, 214 (D. Md. 1990).  Accordingly, the Bankruptcy Court lost jurisdiction over the farm when it lifted the stay.  *See id.*

Wincopia Farms contends that even if the farm was removed from the estate, the claim is part of the estate and remained after the foreclosure sale.  The estate's property includes causes of action.[22]  *In re Bogdan*, 414 F.3d 507, 512 (4th Cir. 2005).  The claim must accrue before the debtor files the bankruptcy petition.  *Miller v. Pac. Shore Funding*, 287 B.R. 47,

---

[22] Unless the debtor remains in possession, when property, including a cause of action, becomes part of the bankruptcy estate, the trustee or debtor-in-possession gains the exclusive right to manage or prosecute it, and the debtor (if it is not in possession) loses standing to pursue it except under a limited set of circumstances.  *Miller v. Pac. Shore Funding*, 287 B.R. 47, 50-51 (D. Md. 2002).  Here, Wincopia Farms is a debtor-in-possession.  ECF No. 2 at 4.  Accordingly, it retains the right to pursue the cause of action.  11 U.S.C. § 1107(a).

50 (D. Md. 2002).[23]  Other Circuits have held that if a cause of action does not allege harm to the debtor, it does not belong to the debtor and the Bankruptcy Court lacks jurisdiction over it. *See In re Van Dresser Corp.*, 128 F.3d 945, 947 (6th Cir. 1997); *In re American Cartage, Inc.*, 656 F.3d 82, 90 (1st Cir. 2011). The defendants urge this Court to adopt that reasoning.  ECF No. 5 at 16.  However, those cases address whether a claim belongs to the debtor or its creditors when a creditor is harmed by the injury for which the debtor asserts a cause of action.  *In re American Cartage, Inc.*, 656 F.3d at 90.[24]

The defendants do not claim that Wincopia Farms's complaint alleges direct harm to a particular creditor.  *See* ECF No. 5 at 16.  Though Wincopia Farms failed to allege harm to itself, that failure was not because a *creditor* was directly harmed by the wrong asserted; accordingly, *Van Dresser* and *American Cartage* are inapposite.  The Bankruptcy Court had jurisdiction over the

---

[23] Claims to property rights that arise *after* the property leaves the estate are beyond the Bankruptcy Court's jurisdiction. *Matter of Chi., Rock Island & Pac. R. Co.*, 794 F.2d 1182, 1186 (7th Cir. 1986) ("The court's jurisdiction lapses with its control of the property.").

[24] "[W]hen the alleged injury to a creditor is indirect or derives solely from an injury to the debtor," the claim belongs to the estate.  *In re American Cartage, Inc.*, 656 F.3d at 90. Conversely, when the creditor "is harmed and no other claimant or creditor has an interest in the cause," the claim "belong[s] personally to the creditors" and the debtor-in-interest lacks standing to bring it.  *Id.*

claim.  Wincopia Farms's objection to conclusion 17 will be sustained.

III. Conclusion

For the reasons stated above, Wincopia Farms's objections to the Bankruptcy Court's report and recommendations will be sustained in part and denied in part.  The objections to proposed finding of fact 15 and conclusions of law 13, 16, and 17 will be sustained.  The Court will not adopt footnote 8 and conclusions of law 13, 16, and 17.  The objections to conclusions of law 11, 14, and 15 will be overruled.  The defendants' motion to dismiss the Second Amended Complaint will be granted; the Second Amended Complaint will be dismissed with prejudice.

_____12/14/11_____
Date

_____
William D. Quarles, Jr.
United States District Judge